UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TROY CUNNINGHAM and HUDDOX LLC,

                Plaintiffs.

-against-

CHET STOJANOVICH and PHOENIX DATA, LLC,

                Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No.: _____

**TO THE ABOVE-NAMED DEFENDANTS:**

Plaintiffs, Troy Cunningham and Huddox LLC (hereinafter referred to as "plaintiffs," "Cunningham" and/or "Huddox"), by and through their attorneys, E. Stewart Jones Hacker Murphy LLP, as and for a Complaint herein against the above-captioned defendants, Chet Stojanovich, and Phoenix Data, LLC (hereinafter referred to as "defendants," "Stojanovich" and/or "Phoenix"), allege as follows:

### INTRODUCTION

1. This action asserts claims for, among other things, civil RICO violations, breach of contract, fraud, conversion and unjust enrichment. The defendants executed a fraudulent scheme to induce the plaintiffs to part with nearly two hundred thousand dollars, based on the defendants' promises and representations they would deliver cryptocurrency mining equipment. The defendants perpetrated this scheme with numerous false and misleading text messages and emails and accepted the proceeds of the fraud by electronic means, such as bank wires and cryptocurrency payments. The defendants have not delivered the goods or services they promised and have not refunded plaintiffs' purchase money despite due demand. Moreover, the totality of the evidence shows that the defendants *never intended* to provide the goods and services that the plaintiffs

bargained for. The consistency of the pattern is overwhelming. In case after case, defendant Stojanovich, acting for himself and his corporate alter ego, described himself as having a cryptocurrency mining capacity that was fictitious, took money from the plaintiffs for goods he was incapable of producing, and then simply absconded (after a brief period of trying to mask the breaches with falsified reports, as discussed below). For the reasons described below, the plaintiffs are entitled to judgment against the defendants.

## JURISDICTION AND VENUE

2.  This Court has Federal question jurisdiction over this matter pursuant to 28 U.S.C. §1331, because the plaintiffs assert a cause of action under the Racketeer Influencing & Corrupt Organizations Act, 18 U.S.C. §1962 *eq. seq.*

3.  Alternatively, the Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because it is a dispute between the citizens or subjects of different states (and foreign states) and the amount in controversy exceeds $75,000.00.

4.  As set forth in more detail below, plaintiff Cunningham is a natural person domiciled in Portland, Oregon, and plaintiff Huddox is a Oregon limited liability company domiciled (with a principal place of business) in Portland, Oregon. Cunningham is the sole member of Huddox.

5.  As set forth in more detail below, defendant Phoenix is, upon information and belief, a business entity formed under the laws of the State of Wyoming. This business has its principal places of business in New York, New York. As set forth in more detail below, defendant Stojanovich is a natural person domiciled in New York, New York.

6.  Accordingly, there is complete diversity among the parties, plaintiffs and defendants.

7. Venue is proper within the Southern District of New York pursuant to 28 U.S.C. §1391(b)(1) and (2) as the subject transactions and occurrences took place in the Southern District of New York and the defendants are located in the Southern District of New York.

8. This Court has jurisdiction over the defendants pursuant to N.Y. CPLR §301 as the defendants are principally headquartered and reside in the State of New York, City of New York, and N.Y. CPLR§ 302(a)(1) because the defendants regularly transact and do business in New York deriving substantial financial gain from the same. Alternatively, the Court also has jurisdiction pursuant to N.Y. CPLR §302(a)(1) because the defendants transacted business with the plaintiffs from New York including, without limitation, invoicing the plaintiffs for equipment from New York and accepting payment for same, and this action arises out of said transactions. Alternatively, the Court has personal jurisdiction pursuant to N.Y. CPLR §302(a)(2), because the defendants committed a tortious act within New York, causing harm to the plaintiffs therefrom (namely, the acts of fraud and conversion pled below).

**DEMAND FOR JURY**

9. Plaintiffs hereby demands a jury trial.

**PARTIES**

10. Plaintiff Cunningham is a natural person residing at 3720 SW 73rd Avenue, Portland, Oregon 97225.

11. Plaintiff Huddox is a liability company organized under the laws of Oregon, with a principal place of business located at 3720 SW 73rd Avenue, Portland, Oregon 97225.

12. Defendant Phoenix is a foreign limited liability company existing under the laws of the State of Wyoming, with its principal place of business at 105 Duane Street, Apartment 20F, New York, New York 10007.

13. Defendant Stojanovich is a natural person residing in the State of New York, with a current residential address of 105 Duane Street, Apartment 20F, New York, New York 10007.

14. Upon information and belief, Stojanovich is the sole member of Phoenix.

15. Upon information and belief, Stojanovich owns, operates, and otherwise formed multiple entities using his personal residence as their principal place of business, including Phoenix.

16. Upon information and belief, Stojanovich, through Phoenix, purports to distribute and sell Bitcoin mining equipment to the public, and to offer Bitcoin mining hosting services.

17. Upon information and belief, Stojanovich, through Phoenix, purports to provide Bitcoin mining hosting services to the public.

18. Upon information and belief, Stojanovich comingles the finances of his business entities, using the same for his personal use and benefit.

19. Upon information and belief, Stojanovich transfers money between his various entities rendering them undercapitalized and insolvent.

20. Upon information and belief, Stojanovich completely dominates and controls Phoenix, and uses that business entity to defraud his customers and hinder creditors, such as the plaintiffs herein.

21. Upon information and belief, Stojanovich regularly fails to observe business formalities with regard to his management and operation of Phoenix.

22. Upon information and belief, Stojanovich used Phoenix to commit fraudulent and wrongful acts against plaintiffs and other members of the public.

23. As such, Phoenix is the alter ego of Stojanovich and of each other. Stojanovich is personally liable for Phoenix's debts under a veil piercing or alter ego theory, and that business entity is likewise liable for debts to the plaintiffs under a veil piercing or alter ego theory.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

24. At all relevant times, defendant Stojanovich, individually and through Phoenix held himself out as a seller of Bitcoin mining equipment and provider of Bitcoin mining hosting services.

25. Bitcoin mining is a support service that facilitates cryptocurrency transactions. Cryptocurrency is, of course, a form of "virtual" currency used to make purchases over the internet. For convenience, security and privacy reasons, some consumers prefer to make online purchases with cryptocurrency rather than credit cards. In these transactions, the consumer uses "regular money" (i.e., U.S. Dollars or another sovereign currency) to purchase units of cryptocurrency (such as Bitcoins) from a cryptocurrency supplier. The consumer can then spend the Bitcoins to purchase goods and services from online retailers.

26. Cryptocurrency miners are third-parties that validate the consumer's Bitcoins for the seller. When a consumer offers Bitcoins to make a purchase, a Bitcoin mining business checks the coins against a digital ledger (known as a blockchain) to confirm that the Bitcoins are legitimate. This is done nearly instantly, through the use of specialty computers commonly known as "miners." The Bitcoin mining business receives a fee for each transaction that it validates, usually equal to some percentage of the Bitcoins that the consumer pays to the seller in the underlying purchase.

27. A Bitcoin mining business will usually run a number of these miner devices at the same time, close to twenty-four hours a day, to validate as many transactions as possible (and realize as much income as possible) as validation opportunities arise.

28. Some Bitcoin mining operations will "host" miner devices owned by other parties. That is, in exchange for a fee, the mining business will assume custody of another person's miner device, plug it into the mining business's power supply and run the device so that it can validate Bitcoin transactions and make money for its owner. A competent mining facility requires a high degree of access to electrical power, because running a large number of machines requires a lot of energy.

29. The defendants purported to be a turnkey solution for persons interested in developing Bitcoin mining portfolios. In particular, the defendants offered to sell Bitcoin mining devices to interested purchasers so that the purchasers could realize income from their machines.

30. Defendant Stojanovich, held himself out as a cryptocurrency mining savant. He also traded on the notoriety of his late father, Paul Stojanovich, who was a producer of reality television shows about law enforcement, such as *Cops* and *American Detective*. As a result of his father's work, Stojanovich represented to plaintiff Cunningham and others that he (Stojanovich) had very substantial connections in law enforcement, which contributed to the defendants' veneer of security and legitimacy.

31. The defendants' offerings were a fraudulent scheme. Repeatedly, the defendants accepted payment from purchasers who had been promised and expected to receive Bitcoin mining devices, but the defendants failed to deliver the devices. In effect, the defendants fraudulently induced outsiders, such as the plaintiffs, to invest in mining devices, and simply took their money

without supplying the goods that the defendants represented that they could or would supply (but, in fact, were incapable of supplying).

**A.     Transactions**

32.     In summer and fall 2021, defendant Stojanovich, acting for himself and for Phoenix, induced third-parties to pay the defendants $108,630 for Bitcoin mining equipment that the defendants did not provide, and never intended to provide.

33.     Defendant Stojanovich, acting for himself and for Phoenix, memorialized written offers for this equipment, which he transmitted to Cunningham, Bobby Sutton ("Sutton") and Nathan Hargrove ("Hargrove") by email and/or text message, on at least the following dates:

      a.     On or about September 3, 2021, offering to sell twelve (12) S19 mining devices to Sutton, listing Cunningham as the salesperson on the invoice, for a price of $108,630.

      b.     On or about September 7, 2021, offering to sell one-hundred fifteen (115) L3+ devices, for $71,250 to Cunningham.

34.     To purchase the mining devices offered by the defendants, Cunningham and these third-parties made electronic funds transfers to defendants on the following dates, in the following amounts:

      a.     On September 3, 2021, a transfer of Ethereum cryptocurrency by Hargrove in the amount of $108,630 in U.S. dollars, including Washington State sales tax.

      b.     On September 7, 2021, a transfer via Zelle by Cunningham in the amount of $500.00 in U.S. dollars.

      c.     On September 7, 2021, a wire transfer by Cunningham in the amount of $25,000 in U.S. dollars.

      d.     On September 14, 2021, a wire transfer by Cunningham in the amount of $45,750 in U.S. dollars.

35. Cunningham and the third-parties made these payments in reliance on Stojanovich's representations that he would provide the mining devices in exchange for said payments.

36. Stojanovich, acting for himself and for defendant Phoenix, never intended to deliver the bargained for mining devices. As set forth below, the defendants repeatedly, as a regular modus operandi, solicited purchase payments by making fraudulent offers, and then pocketed the money without actually delivering the goods.

37. The delivery of the foregoing payments constituted an acceptance of the defendants' offer to sell the cryptocurrency mining equipment, forming a binding contract between the parties in which the defendants were obligated to deliver the goods and services ordered.

38. The defendants never produced, procured or delivered the mining equipment that Cunningham ordered and paid for.

39. This constitutes a breach of the parties' contract.

40. The defendants never produced, procured or delivered the mining equipment that Sutton and Hargrove ordered and paid for.

41. These third-parties now allege Cunningham is responsible to make them whole as a result of Stojanovich's failure to perform, and intent never to perform.

42. After Cunningham made the above payments to Phoenix, Stojanovich became less communicative, and more evasive in his dealings with Cunningham. Stojanovich routinely ignored Cunningham's text messages which sought an accounting of what was occurring with his machines.

43. Cunningham has duly demanded the return of his property and his payments, which the defendants ignored until tendering three checks in Canadian currency on an account with the Royal Bank of Canada.

44. These checks from an account in Stojanovich's name personally were:

   (1) check no. 51, dated November 1, 2021, in the amount of $45,750 made payable to "Troy Cunningham of Huddox" with a memo line of "Refunded for Reserve of Hardware Payments;"

   (2) check no. 52, dated November 1, 2021, in the amount of $48,000 made payable to "Huddox, Troy Cunningham" with a memo line of "Payment 4 for Hardware Payment Back for Resale;" and

   (3) check no. 53, dated November 1, 2021, in the amount of $100,000 made payable to "Huddox, Troy Cunningham" with a memo line of "Payment 6 Refund 3, Miners Resold for Phoenix."

45. Two of these checks have been returned unpaid by the Royal Bank of Canada, while the third (No. 51) is currently "processing."

46. The foregoing constitutes a breach of the parties' contract.

**B.  Loss of Cryptocurrency Value**

47. Each and every one of the plaintiffs who made the above payments using cryptocurrency suffered additional harm, equal to the difference in value of the cryptocurrency units at the time they made the payments, and their value at the time of trial (or motion for default judgment). The dollar value of cryptocurrency fluctuates over time. Through their misrepresentations, the defendants induced the plaintiffs to part with cryptocurrency units which, upon information and belief, have a higher dollar value today than they did at the time of payment. If the defendants had not induced the above-described payments, the plaintiffs could have enjoyed the higher value that later accrued to the cryptocurrency units.

9

C. **Currency Exchange Fees**

48. Each returned check, drawn on the Royal Bank of Canada, was charged a currency exchange fee by plaintiffs' bank, for an additional loss, as yet undetermined for all three checks.

## AS AND FOR A FIRST CAUSE OF ACTION (CIVIL RICO)

49. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

50. The defendants carried out their scheme through the commission of two or more acts of racketeering activity within the meaning of the Racketeer Influence & Corrupt Organizations Act (RICO), including, without limitation, 18 U.S.C. §§1962(c) and 1964(c).

51. The defendants' racketeering activity consisted of numerous acts of wire fraud in violation of 18 U.S.C. §1343. The defendants themselves used electronic means such as emails, text messages and videoconferencing to make fraudulent misrepresentations to the plaintiffs, and accepted payment from the plaintiffs by electronic means such as wire transfers and cryptocurrency exchanges. The racketeering acts included, by example and without limitation:

   a. Text messages and emails through which defendant Stojanovich, acting for himself and for Phoenix, transmitted each of the written invoices described above, on the dates set forth above, which presented offers to sell Bitcoin mining devices which the defendants never intended to deliver (and were incapable of delivering), which emails and text messages were sent for the very purpose of inducing the plaintiffs to pay money to the defendants;

   b. Numerous text messages in which Stojanovich, acting for himself and for Phoenix, described his companies' operations in a false and misleading manner. These include, without limitation, dozens of text messages and emails from Stojanovich to plaintiff Cunningham and the third-parties between August 2021 and October 2021.

52. The defendants' acts of racketeering activity constituted a pattern.

53. Said acts constituted a pattern because the acts had the same or similar purposes, results, participants, victims, or methods of commission, and are otherwise interrelated by

distinguishing characteristics.  These were not isolated events.  The defendants perpetrated this scheme against each of the plaintiffs, and other individuals, in the same way, offering the same type of equipment for sale, inducing payment by making the same offers in the same format, and injuring the plaintiffs in the same way – *i.e.*, by taking their money, and utterly failing to deliver the equipment.

54. There are currently pending in the Southern District of New York the following cases setting forth the same or similar fact patterns whereby Stojanovich repeated the pattern of enticing buyers of crypto-mining equipment and services to make payments to defendants without ever intending to deliver:

   a. <u>Alex Holmes, et al. v. Chet Mining Co., LLC, et al.</u> (SDNY Case No. 1:20-CV-04448-LJL);

   b. <u>3 Point Ventures, Ltd., et al. v. Chet Mining Co., LLC, et al.</u> (SDNY Case No. 1:20-CV-02531-GBD);

   c. <u>Schwartzberg v. Chet Mining Co., LLC, et al.</u> (SDNY Case No. 1:20-CV-01880-LJL); and

   d. <u>Ethereum Ventures, LLC v. Chet Mining Co., LLC, et al.</u> (SDNY Case No. 1:19-CV-07949-LLS).

55. These acts also constituted a pattern because they were characterized by continuity. The scheme reflected open-ended continuity, inasmuch as the defendants' activity has continued or threatened to continue beyond the period during which the predicate acts were performed. Indeed, the defendants have continued to use fraud and deception as a means to evade the plaintiffs and their efforts to recover their money and/or their property.  Stojanovich repeated his false and misleading text messages and emails throughout 2021, to disguise his non-performance.

56. The scheme constitutes an enterprise through which each of the defendants directly or indirectly participated.  Stojanovich and Phoenix are each separate and distinct entities (although conflated and abused by Stojanovich), each of which plays a discrete part in the scheme.

11

Stojanovich peddles himself as a savant in the field of cryptocurrency mining to induce interest from investors and makes the extravagant representations and promises. Phoenix is the vehicle used primarily to charge customers and collect their money -- Phoenix was the entity that predominantly invoiced the plaintiffs and received their payments.

57. The defendants' activities affected interstate commerce. Each and every one of the plaintiffs are domiciled out of state, did business with the defendants in New York from out of State, and transferred funds to the defendants from out of State.

58. The defendants' activities caused injury to the plaintiffs. By reason of the foregoing acts of racketeering activity, each of the plaintiffs was induced to pay money to the defendants, which the defendants misappropriated.

59. That as a result of the foregoing, Stojanovich and Phoenix are jointly and severally liable to plaintiffs for at least: (i) $193,750 in compensatory damages for Cunningham; (ii) $193,750 in compensatory damages for Huddox; (iii) additional compensatory damages for each of the plaintiffs who made payments to the defendants through cryptocurrency, for the difference in value between the cryptocurrency units when paid and their value at the time of trial or motion for default judgment; (iv) the loss in value from currency exchange fees on checks issued in Canadian dollars instead of U.S. dollars; (v) attorneys' fees for prosecuting the civil RICO claims; (vi) trebling of said damages pursuant to civil RICO; and (vii) interest at the legal rate thereon from and after the dates of defendants' unlawful acts.

**AS AND FOR A SECOND CAUSE OF ACTION (BREACH OF CONTRACT)**

60. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

61. Each of the above-described offers to sell mining equipment by the defendants, and the plaintiffs' acceptance of same and delivery of payment, formed binding and enforceable contracts in which the defendants were obligated to deliver the equipment for which the plaintiffs paid.

62. The plaintiffs fully performed under their contracts by tendering the payments described above.

63. The defendants have breached their contracts with each of the plaintiffs by failing to deliver any of the equipment ordered and paid for by the plaintiffs.

64. The defendants have failed to deliver the equipment that the plaintiffs bought and paid for.

65. As a direct and proximate result of the defendants' breach of contract, the plaintiffs suffered actual and consequential damages.

66. The defendants' conduct was willful, malicious, and undertaken with malice aforethought.

67. That as a result of the foregoing, Stojanovich and Phoenix are jointly and severally liable to plaintiffs for breach of contract, and the plaintiffs are entitled to at least: (i) $193,750 in compensatory damages for Cunningham; (ii) $193,750 in compensatory damages for Huddox; (iii) additional compensatory damages for each of the plaintiffs who made payments to the defendants through cryptocurrency, for the difference in value between the cryptocurrency units when paid and their value at the time of trial or motion for default judgment; (iv) the loss in value from currency exchange fees on checks issued in Canadian dollars instead of U.S. dollars; (v) lost profits on the operation of the mining equipment plaintiffs intended to keep for their own business use;

(vi) trebling of said damages pursuant to civil RICO; and (vii) interest at the legal rate thereon from and after the dates of defendants' unlawful acts.

**AS AND FOR A THIRD CAUSE OF ACTION (FRAUD/FRAUDULENT INDUCEMENT)**

68. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in above paragraphs as if repeated and set forth at length in this cause of action.

69. Stojanovich used his company, Phoenix, to commit fraud as against the plaintiffs.

70. Stojanovich used Phoenix's seemingly legitimate facade to induce plaintiffs into entering into a contract for a sale of goods that the defendants knew they would not and could not perform.

71. At all relevant times Stojanovich intended to cause Phoenix to breach said contracts, and never intended to perform them.

72. Stojanovich accepted the plaintiffs' funds personally and/or by and through Phoenix, intending to keep the purchase money for his own personal use and benefit without delivering the goods sold to the plaintiffs.

73. Stojanovich represented to the plaintiffs that he would use their funds to purchase the equipment as promised which representation was false when made because Stojanovich had a present intention not to perform said promises.

74. The plaintiffs materially and reasonably relied upon said misrepresentations to their detriment. Namely, said misrepresentations induced the plaintiffs to pay the price for said equipment in the amounts alleged above.

75. Stojanovich, upon information and belief, transferred the plaintiffs' purchase money out of Phoenix's financial accounts, for the personal benefit of Stojanovich.

76. Stojanovich, individually, used the corporate entities to commit fraud on the plaintiffs with malice aforethought for his own personal benefit, willfully and maliciously.

77. As a result of the foregoing, Stojanovich and Phoenix are jointly and severally liable to plaintiffs, and the plaintiffs are entitled to at least: (i) $193,750 in compensatory damages for Cunningham; (ii) $193,750 in compensatory damages for Huddox; (iii) additional compensatory damages for each of the plaintiffs who made payments to the defendants through cryptocurrency, for the difference in value between the cryptocurrency units when paid and their value at the time of trial or motion for default judgment; (iv) the loss in value from currency exchange fees on checks issued in Canadian dollars instead of U.S. dollars; (v) attorneys' fees incurred to pursue the fraud claims; (vi) trebling of said damages pursuant to civil RICO; and (vii) interest at the legal rate thereon from and after the dates of defendants' unlawful acts.

## AS AND FOR A FOURTH CAUSE OF ACTION (CONVERSION)

78. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

79. Plaintiffs own and are entitled to the exclusive possession of the money they paid the defendants or, failing that, possession of the equipment they purportedly purchased (for those plaintiffs who ordered equipment).

80. Stojanovich wrongfully used Phoenix to convert the equipment and/or plaintiffs' purchase money.

81. The equipment bargained for was worth at least the amounts paid by each of the plaintiffs for same.

82. The defendants have wrongfully retained plaintiffs' funds and the equipment despite due demand from plaintiffs for the return of said funds or fulfillment of the contracts.

83. The defendants' conduct was willful and malicious.

84. That as a result of the foregoing, Stojanovich and Phoenix are jointly and severally liable to plaintiffs, and the plaintiffs are entitled to at least: (i) $193,750 in compensatory damages for Cunningham; (ii) $193,750 in compensatory damages for Huddox; (iii) additional compensatory damages for each of the plaintiffs who made payments to the defendants through cryptocurrency, for the difference in value between the cryptocurrency units when paid and their value at the time of trial or motion for default judgment; (iv) the loss in value from currency exchange fees on checks issued in Canadian dollars instead of U.S. dollars; (v) attorneys' fees incurred for pursuing the claims for conversion; (vi) trebling of said damages pursuant to civil RICO; and (vii) interest at the legal rate thereon from and after the dates of defendants' unlawful acts.

## AS AND FOR A FIFTH CAUSE OF ACTION (N.Y. UCC § 2-711)

85. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

86. That pursuant to N.Y. UCC §2-711, when the seller fails to make the delivery of goods, the buyer is entitled to a refund of the paid purchase price.

87. That the plaintiffs are also entitled to damages pursuant to N.Y. UCC §2-713 for the difference in the market price at the time of purchase compared to the current market price of the goods.

88. Upon information and belief it would now cost the plaintiffs considerably more to purchase the equipment from another provider.

89. Pursuant to N.Y. UCC §§2-711 and 2-713 the plaintiffs are entitled to damages in an amount of at least the amounts they paid for said equipment, plus the difference in market value

between the equipment and the purchase price to "cover" the purchase of new equipment today, in an amount to be determined at trial.

90. Plaintiff Huddox contracted to sell 100 of the L3++ miners to Jeffrey Divilbiss ("Divilbiss") for a total of $100,000, which amount Divilbiss wired to plaintiffs in two installments on September 13 and 14, 2021.

91. As it becomes apparent that defendants offered excuses and obfuscations meant they had no intention of delivering the contracted-for machines, plaintiffs refunded the full $100,000 to Divilbiss on or before October 26, 2021.

92. As a result, plaintiffs lost $28,750 in profits on the resale of the 100 machines and another $5,700 on the remaining 15 machines defendants did not deliver.

### AS AND FOR A SIXTH CAUSE OF ACTION (N.Y. UCC § 2-715)

93. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

94. That pursuant to N.Y. UCC §2-715 the plaintiffs are entitled to incidental and consequential damages as a result of the defendants' breach and failure to deliver the equipment as contracted with said amount to be determined at trial by the finder of fact.

### AS AND FOR A SEVENTH CAUSE OF ACTION (N.Y. UCC § 2-716)

95. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

96. Upon information and belief, the plaintiffs have undertaken reasonable efforts to cover the goods that the defendants failed to deliver, and the circumstances indicate that the same will be unavailing.

97. That pursuant to N.Y. UCC §2-716 the plaintiffs are entitled to specific performance of the parties' contract thus this Court should order that if the defendants are in actual or constructive possession of the equipment, then it belongs to the plaintiffs and should be delivered to the plaintiffs as promised.

**AS AND FOR AN EIGHTH CAUSE OF ACTION (UNJUST ENRICHMENT)**

98. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

99. In the alternative, if and to the extent the Court or the trier of fact finds that an express contract is lacking between the parties, the defendants are liable in equity.

100. Namely, the defendants have been unjustly enriched by their receipt of the above-described purchase moneys, and their failure to deliver the equipment and services for which those funds were given. In equity, the defendants ought not be permitted to retain those benefits and should be enjoined to disgorge them to the plaintiffs.

101. That as a result of the foregoing, Stojanovich and Phoenix are jointly and severally liable to plaintiffs, and the plaintiffs are entitled to at least: (i) $193,750 in compensatory damages for Cunningham; (ii) $193,750 in compensatory damages for Huddox; (iii) additional compensatory damages for each of the plaintiffs who made payments to the defendants through cryptocurrency, for the difference in value between the cryptocurrency units when paid and their value at the time of trial or motion for default judgment; (iv) the loss in value from currency exchange fees on checks issued in Canadian dollars instead of U.S. dollars; (v) trebling of said damages pursuant to civil RICO; and (vi) interest at the legal rate thereon from and after the dates of defendants' unlawful acts.

## AS AND FOR A NINTH CAUSE OF ACTION (INDEMNIFICATION)

102. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the above paragraphs as if repeated and set forth at length in this cause of action.

103. Plaintiffs were unable to supply any equipment to its proposed buyers due solely to defendants' improper conduct and negligence.

104. Although plaintiffs were in no way responsible for the non-delivery of the mining equipment, plaintiffs are now alleged to be liable to third-parties Sutton, Hargrove and Divilbiss, which significantly damaged plaintiffs' reputation and goodwill with the third-parties.

105. Plaintiffs were owed a duty of reasonable care and/or fair dealing by defendants in a manner consistent with the inherent obligations of a party to a transaction such as detailed above.

106. Defendants were well aware of the planned third-party sales and that plaintiffs were dependent upon defendants' promised performance.

107. As such, plaintiffs are entitled to full indemnification from defendants for any amounts owed to these third-parties.

**WHEREFORE**, the plaintiffs demand judgment against the defendants jointly and severally for:

(i) an award of compensatory damages to Cunningham for at least $193,750;

(ii) an award of compensatory damages to Huddox for at least $193,750;

(iii) additional compensatory damages for each of the plaintiffs who made payments to the defendants through cryptocurrency, for the difference in value between the cryptocurrency units when paid and their value at the time of trial or motion for default judgment;

(iv)    the loss in value from currency exchange fees on checks issued in Canadian dollars instead of U.S. dollars;

(v)    trebling of the foregoing damages pursuant to civil RICO;

(vi)    an award of attorneys' fees and litigation costs incurred in this action for the claims related to conversion, fraud and pursuant to civil RICO;

(vii)    an award of punitive damages for all plaintiffs in an amount to be determined at trial; and

(viii)    interest at the legal rate thereon from and after the dates of said breaches.

DATED: December 21, 2021

E. STEWART JONES HACKER MURPHY LLP

By: _____
Patrick L. Seely, Jr.
SDNY Bar No. PS3874
*Attorneys for Plaintiffs*
28 Second Street
Troy, New York 12110
Tel. No.: (518) 274-5820
Email: pseely@joneshacker.com